UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEVEN J. WILCOX, #223862,   Case No. 2:20-cv-234

      Plaintiff,   Hon. Hala Y. Jarbou
                                                           U.S. District Judge

v.

JOSHUA STEPHEN KALCHERT,

      Defendant.
_____/

# REPORT AND RECOMMENDATION

## I.   Introduction

This Report and Recommendation (R&R) addresses Plaintiff Steven J. Wilcox's motion for the determination of money damages.  (ECF No. 93.)

This case arises out of incidents that took place while Wilcox and Defendant Joshua Stephen Kalchert were confined in Alger Correctional Facility (LMF) in Munising, Michigan.  Wilcox and Kalchert were cellmates in LMF's Protective Custody Unit from September 2019 to April 2021.  (ECF No. 1, PageID.2.)  Because Wilcox has a physical disability that limits the use of his right arm, Kalchert also served as Wilcox's aid.  (*Id.*)  During this time, Wilcox says that Kalchert sexually assaulted and brutalized him on three occasions.  (*Id.*)

On November 16, 2021, this Court entered default judgment in favor of Wilcox. (ECF No. 90.)  On the same date, District Judge Hala Y. Jarbou directed the undersigned to address Wilcox's prior requests for discovery, conduct the necessary

proceedings to determine damages, and issue an R&R on damages. (ECF No. 89.) The undersigned denied Wilcox's discovery requests and directed him to file evidence of his damages with the Court. (ECF No. 91, PageID.370.) The undersigned suggested that Wilcox could do this through medical records obtained via processes proscribed by the Michigan Department of Corrections (MDOC), analogous case law, and an affidavit laying out his damages and the justifications therefore. (*Id.*, PageID.360-370.)

Wilcox now moves the Court to determine damages based on his declaration, three mental health treatment plans, analogous caselaw, and requests for admissions that Wilcox allegedly provided to Kalchert, which Wilcox says should be deemed admitted. (ECF No. 94, PageID.386-392.) He requests a total of $43,335,500 in damages.[1] (*Id.*, PageID.393.)

After reviewing the evidence of damages provided by Wilcox, the undersigned respectfully recommends that the Court award Wilcox $1.5 million in non-economic damages. In the opinion of the undersigned, Wilcox has provided the Court with sufficient evidence of emotional distress and analogous caselaw from which the Court can reasonably ascertain those damages. However, Wilcox has not provided sufficient

---

[1]  Wilcox provides the following break-down of his requested damages award:
- $30,000,000 for past non-economic damages ($10,000,000 per count),
- $7,500,000 for exemplary damages ($2,500,000 per count),
- $744,000 for future economic damages,
- $91,500 for future medical expenses, and
- $5,000,000 for future non-economic damages.

(ECF No. 94, PageID.393.)

2

evidence from which the Court could reasonably ascertain economic damages. And exemplary damages, under the circumstances of this case, would be duplicative.

## II.     Procedural History

Wilcox initiated this action against Kalchert on October 27, 2020. In his complaint, Wilcox asserted three counts of sexual assault and intentional infliction of emotional distress. Wilcox also asserted damages exceeding $75,000. (ECF No. 1.)

On February 12, 2021, Kalchert signed a waiver of service, acknowledging that judgment may be entered against him if he did not serve Wilcox with an answer or a Rule 12 motion within 60 days. (ECF No. 53.) Kalchert did not respond to attempts to reach him after waiving service and did not file an answer or a Rule 12 motion.

On May 24, 2021, Wilcox moved for default judgment. (ECF No. 58.) On May 25, 2021, the Clerk of Court entered default as to Kalchert (ECF No. 56), and on October 19, 2021, the undersigned scheduled a hearing on Wilcox's motion for default judgment (ECF No. 85). Kalchert did not appear. On October 26, 2021, the undersigned issued an R&R recommending that the Court grant default judgment in favor of Wilcox and either hold an evidentiary hearing regarding damages or require him to submit documentary evidence of his damages. (ECF No. 87.)

On November 16, 2021, District Judge Hala Y. Jarbou approved and adopted the R&R, but referred the matter of damages to the undersigned, and directed the undersigned to consider requests for discovery previously filed by Wilcox. (ECF No. 89, PageID.366.)

On November 11, 2021, the undersigned issued an Order denying Wilcox's request for discovery on the grounds that the discovery requests that Wilcox proposed to serve were directed to Kalchert, who by all indications would not respond, and included requests for production that Wilcox could obtain without a period of formal discovery. (ECF No. 91, PageID.369.) In the same Order, the undersigned directed Wilcox to file documentary evidence of his damages with the Court. (*Id.*, PageID.370.)

On January 18, 2022, Wilcox moved for the determination of damages in this case. (ECF No. 93.)

### III.    Factual Allegations and Background

On December 31, 2019, Kalchert allegedly attempted to solicit sex from Wilcox, who declined. (ECF No. 1., PageID.3.) Upon Wilcox's rejection, Kalchert made the men coffee. When Wilcox drank the coffee, he became drowsy, and lost consciousness. (*Id.*) When Wilcox regained consciousness, he realized that he was naked, gagged, and bound, and that Kalchert was raping him. (*Id.*) At the same time, Kalchert was biting Wilcox's ears, neck, and shoulders. (*Id.*) At some point later, Kalchert placed Wilcox's genitals in his (Kalchert's) mouth and forced Wilcox to place his (Kalchert's) genitals in Wilcox's mouth. (*Id.*) When he was done, Kalchert left Wilcox bound, and tattooed the back of Wilcox's neck. (*Id.*, PageID.4.) Kalchert then beat Wilcox, threatening further harm if Wilcox told anyone about the assault. (*Id.*)

On February 14, 2020, Kalchert again allegedly solicited sex from Wilcox. (*Id.*, PageID.5.) When Wilcox again refused, Kalchert choked Wilcox until he lost consciousness. (*Id.*) When Wilcox regained consciousness this time, Kalchert was

again raping and biting him. (*Id.*) Kalchert then choked Wilcox until he lost consciousness a second time. (*Id.*) When Wilcox regained consciousness, Kalchert's genitals were in his (Wilcox's) mouth, and Kalchert was penetrating Wilcox with his fingers. (*Id.*) When he was done, Kalchert again beat and threatened Wilcox. (*Id.*)

On March 13, 2020, Kalchert allegedly solicited sex from Wilcox for the third and final time. (*Id.*, PageID.6.) Wilcox said no, and Kalchert choked Wilcox with a belt, beat him, and urinated on him. (*Id.*) After, Kalchert put Wilcox's genitals in his (Kalchert's) mouth before moving to touch and penetrate Wilcox's genitals. (*Id.*)

### IV. Wilcox's Proposed Evidence of Damages

Under the circumstances of this case, Kalchert's default served only to admit liability; Wilcox must prove the amount of his damages. "A default judgment on well-pleaded allegations establishes only defendant's liability; plaintiff must still establish the extent of damages." *Kelley v. Carr*, 567 F. Supp. 831, 841 (W.D. Mich. 1983); *see also Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) ("Where damages are unliquidated a default admits only the defaulting party's liability and the amount of damages must be proved." (quoting *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995))); *Ohio Nat'l Life, Assurance Corp. v. Crescent Fin. & Ins. Agency, Inc.*, No. 1:15-CV-727, 2016 WL 8199123, at *1 (S.D. Ohio June 20, 2016) (noting that upon entry of default and default judgment, "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven" (citation omitted)).

Although Fed. R. Civ. P. 55(b)(2) allows this Court to conduct a hearing to ascertain damages, the undersigned determined after careful consideration that such a hearing was unnecessary, as Wilcox could instead establish his damages with documentary evidence including affidavits, medical records, and analogous case law. (ECF No. 93.)  On January 18, 2022, Wilcox filed a motion for the determination of damages (ECF No. 93) and an accompanying brief (ECF No. 94).  As evidence of his damages, Wilcox included in his filings: (1) a declaration dated January 11, 2022 (ECF No. 93-1), (2) records of three mental health evaluations, (ECF No. 93-3), (3) references to damages awarded in nine sexual assault cases throughout the country, (ECF No. 94, PageID.390-392), and (4) the requests for admissions Wilcox says a third-party mailed to Kalchert on December 3, 2021, (ECF No. 94-1).[2]

In his declaration dated January 11, 2022, Wilcox says that he requested his medical records from the MDOC, but that the costs associated with his records totaled $149.50, which he could not afford.  (ECF No. 93-1, PageID.379.)  Wilcox then detailed the injuries he received as a result of Kalchert's rape and assaults, which include: (1) a prolapsed rectum, (2) a non-healing anal fissure, (3) anal incontinence, (4) loss of sexual function, (5) a 40% loss in hearing, (6) Tinnitus, (7) scars on his thighs, chest, back, shoulders, and neck, (8) Post-Traumatic Stress Disorder, and (9) Temporal Mandibular Joint Dysfunction (TMJ).  (*Id.*, PageID.379-380.)  According to Wilcox, a mental health provider determined that he will need mental health treatment and

---

[2]  Wilcox also references the declaration filed on May 24, 2021 (ECF No. 55), but that document was not signed or dated per the requirements of 28 U.S.C. § 1746.

medication for at least five years, and possibly for the remainder of his life. (*Id.*, PageID.380.)

Although Wilcox did not have the funds to provide the Court with his medical records, he did provide three of his MDOC Outpatient Treatment Plans (OTPs). (ECF No. 93-3, PageID.383.) The first OTP, which is dated October 27, 2020, sets forth Wilcox's "problems" as obsessive-compulsive disorder and PTSD. (*Id.*) Among Wilcox's goals were to decrease and better manage his anxiety. (*Id.*) This OTP did not say anything about Wilcox's prior sexual assaults. The second OTP, which is dated November 23, 2020, listed the same problems, and noted that one of Wilcox's goals was to identify the triggers that led to his anxiety. (*Id.*, PageID.384.) This OTP did not say anything about Wilcox's prior sexual assaults. The third and final OTP, which is dated May 14, 2021, reflected the same problems, but among Wilcox's goals this time was to "decrease his hypervigilance, nightmares, flashbacks, and intrusive thoughts due to [his] sexual assaults." (*Id.*, PageID.385.)

After detailing his injuries, Wilcox pointed to damage awards in nine cases that he believed to be sufficiently analogous. (*Id.*, PageID.390-392.) These awards ranged from $8.4 million[3] to $127 million.[4] The plaintiffs in these cases were either

---

[3] Brief for Respondent at 6-7, *In re Greenberg*, Cal. App. 1 Dist. No. A116946, 2007 WL 2314176, at *6-7.
[4] *Gray v. Hohenshell*, 927 N.W.2d 680, 2019 WL 325015, at *1 (Iowa Ct. App. 2019).

7

minors,[5] or entrusted to the care of residential facilities.[6] While some of the cases involved claims against the individuals who perpetrated the sexual assaults,[7] most of the cases also involved negligence claims against the individuals or entities responsible for hiring or supervising the individuals.[8] None of the cases that Wilcox provided involved the sexual assault of incarcerated individuals.

The final evidence that Wilcox argues this Court should consider in formulating his damages are the requests for admissions Wilcox says that a third-party mailed to Kalchert on December 3, 2021. (ECF No. 94-1, PageID.397 (proof of mailing form signed by Daniel Michalak, dated Dec. 3, 2021), PageID.398-406 (requests for admission, interrogatories, and requests for production of documents).) Wilcox's requests for admissions involve many of the same allegations of injury set forth in Wilcox's declaration. However, Wilcox also asks Kalchert to admit: (1) that Wilcox will suffer from PTSD-related symptoms and require treatment for at least five years, (2) that Wilcox's mental health treatment will cost him approximately

---

[5] Brief for Respondent at 4-5, 2007 WL 2314176, at *4 (10 year-old girl); Verdict Form, *Doe v. Rose Bowl Aquatics Center*, Cal. Super. Ct. No. BC661096, 2016 WL 11410632 at *1 (11 year-old boy); *Gray*, 2019 WL 325015, at *1 (13 year-old girl); Special Verdict, *Atchison v. Maiello*, N.Y. Sup. No. 11141/2003, 2007 WL 5123780 (15 year-old boy and 15 year-old girl); *Whitwell v. Archmere Acad., Inc.*, 463 F. Supp. 2d 482, 483 (D. Del. 2006) (14 year-old boy); *Doe v. Doe*, No. 307420, 2014 WL 6852750, at *1 (Mich. Ct. App. Dec. 4, 2014) (14 year-old girl).

[6] *See* Brief for Appellee, *Selk v. Res-Care, Inc.*, N.M. Ct. App. No. 30,319, 2, 4-6, https://coa.unm.edu/oral-arguments/2011/11/docs/selk/Plantiff-Answer-Brief.pdf (42 year-old man with disabilities); Verdict and Settlement Summary, *Schwartz v. Oakdale Heights Mgt. Corp.*, Cal. Super. Ct. No. PC044618, 2010 WL 2894470 (92 year-old women with dementia); *McLaughlin v. Garden Spot Vill.*, 144 A.3d 950, 953 (2016) (elderly woman who was asleep during an attempted assault).

[7] *See, e.g.*, *Whitwell*, 463 F. Supp. at 483; *Doe*, 2014 WL 6852750, at *1.

[8] *See, e.g.*, *Whitwell*, 463 F. Supp. at 483; *McLaughlin*, 144 A.3d at 953.

8

$15,000 per year, (3) that Wilcox will need surgery to correct his TMJ, (4) that corrective surgery will cost Wilcox approximately $25,000, (5) that Wilcox will need to pay to remove the tattoo that Kalchert gave him without his consent, (6) that the tattoo removal will cost approximately $1,500, (7) that Wilcox has life expectancy of 80 years, (8) that Wilcox had an earning capacity of $60,000 per year, and (9) that Kalchert's actions reduced that capacity by 40%. (*Id.*, PageID.400-406.)

V.    **Damages Analysis**

As the Court has granted Wilcox default judgment in this matter, it is now tasked with "ascertain[ing] the amount of damages with reasonable certainty." *Vesligaj*, 331 F. App'x at 355 (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). Because this is a diversity action wherein liability is based on Michigan law, the availability and calculation of damages is governed by Michigan law. *Davis v. Ivy*, No. 11-10803, 2013 WL 5902035, at *3 (E.D. Mich. Oct. 31, 2013) (first citing *Losey v. No. Am. Philips Consumer Elecs. Corp.*, 792 F.2d 58, 62 (6th Cir.1986); and then citing *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989)). Under Michigan law, Wilcox may recover damages for past and future economic and non-economic losses. *Id.* (citing *Philips v. Butterball Farms Co.,* 448 Mich. 239, 251 & n. 32, 531 N.W.2d 144 (1995)). Because Wilcox asserts claims of sexual assault, he may also recover exemplary damages for "humiliation, sense of outrage, and indignity," *Neal v. Miller*, 778 F. Supp. 378 (W.D. Mich. 1991), to the extent that such an award does not result in double-recovery for a single injury, *Veselenak v. Smith*, 414 Mich. 567, 327 N.W.2d 261, 263 (1982). As

9

set forth above, Wilcox requests $835,500 in future economic damages,[9] $30 million in past non-economic damages, $5 million in future non-economic damages, and $7.5 million in exemplary damages.

### a. Economic Damages

Turning first to Wilcox's request for $835,500 in future economic damages, the undersigned finds that Wilcox has not provided sufficient evidence to support a reasonably certain award. Although Wilcox's declaration sets forth a host of serious physical injuries requiring treatment and impacting Wilcox's ability to work, Wilcox has not provided any verifying medical evidence. Although the undersigned understands that $149.50 is no small amount of money, that fee reflects the cost of copying Wilcox health records spanning a matter of years. By all indications, Wilcox could have requested health records from a more limited timeframe that would have substantiated his injuries but chose to proceed without them. And although Wilcox claims that many of his injuries resulted in scarring, including a tattoo on the back of his neck, he chose not to submit evidence of these scars.

But even if Wilcox had placed verifying medical evidence in the record, he did not provide evidence regarding the economic impact of those injuries from which the Court could reasonably ascertain an appropriate award. Although Wilcox asserts that his requests for admissions should be deemed admitted, and those requests include figures for Wilcox's economic damages, the undersigned respectfully

---

[9] Specifically, Wilcox requests $744,000 in future economic damages and $91,500 in future medical expenses, which totals $835,000. (ECF No. 94, PageID.393.)

10

disagrees. (ECF No. 94, PageID.386-388.) Wilcox's case is distinct from those in which the court granted default judgment as a discovery sanction, at the same time deeming requests for admissions served on the defaulted party admitted. *See, e.g., Bruckmann v. Griswald*, No. 2:18-CV-139, 2019 WL 6271620 (E.D. Ky. Oct. 17, 2019) (deeming the defendants' requests for admissions admitted and granting default judgment in their favor after the plaintiff refused to properly respond to the requests), *report and recommendation adopted*, No. CV2018139, 2019 WL 6270232 (E.D. Ky. Nov. 22, 2019). By the time Wilcox says he enlisted a third-party to mail the discovery requests to Kalchert, Kalchert had defaulted, the Court had granted default judgment, and the undersigned had denied Wilcox's motions for limited discovery.

Like other courts asked to rely on post-default requests for admissions in determining damages, the undersigned is concerned that such reliance would allow for "a form of bootstrapping" that would defeat the purpose of requiring a plaintiff to establish the extent of their damages. *LG Elecs., Inc. v. Advance Creative Comput. Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002); *see also Richmond v. SW Closeouts, Inc.*, No. 3:14-CV-4298-K, 2017 WL 722201, at *5 (N.D. Tex. Jan. 30, 2017), *report and recommendation adopted*, No. 3:14-CV-4298-K, 2017 WL 722029 (N.D. Tex. Feb. 22, 2017) (explaining that the plaintiff could not "circumvent []his responsibility" to evidence his damages by relying on post-default requests for admissions). The undersigned is especially reluctant to rely on Wilcox's requests in determining damages because it appears that the scope of Wilcox's requests reaches

11

beyond what Kalchert could possibly know.[10]  Accordingly, the undersigned recommends that the Court decline to award economic damages.

### b. Non-economic Damages

Turning then to Wilcox's request for non-economic damages, the undersigned finds that Wilcox has provided sufficient evidence to reasonably ascertain an award of $1.5 million.

Under Michigan law, non-economic damages may be awarded for mental and emotional distress. *Veselenak*, 372 N.W. 2d at 574.  In Wilcox's declaration, he states that Kalchert's conduct caused him to experience humiliation, anxiety, intrusive thoughts, flashbacks, nightmares, and insomnia. (ECF No. 93-1, PageID.380-381.) But Wilcox does not support his declaration with evidence that he pursued mental health treatment or received diagnoses due to Kalchert's conduct.  The OTPs that Wilcox supplied show that he was receiving some level of treatment, but they do not establish that Wilcox initiated treatment because of the sexual assaults.  And while the OTPs state that Wilcox had "problems" including obsessive compulsive disorder and PTSD, they did not clarify whether the problems were formally diagnosed or self-identified, or when they came about. (ECF No. 93-3, PageID.383-385.)  In addition, the October and November OTPs do not reflect any discussion of the sexual assaults. (*Id.*, PageID.383-384.)  Nevertheless, "Michigan law allows recovery for mental

---

[10] For example, Wilcox's asks Kalchert to admit that, "as a proximate result of the battery, [Wilcox] suffered a permanent injury to his hearing and ears which causes a 40% hearing loss and a ringing in the ears . . . ." (ECF No. 94-1, PageID.401.)

anguish based on the plaintiff's own testimony" as long as there is "specific and definite evidence of [a plaintiff's] mental anguish, anxiety or distress." *Moody v. Pepsi-Cola Metro. Bottling Co.*, 915 F.2d 201, 210 (6th Cir. 1990) (alteration in original) (quoting *Wiskotoni v. Michigan Nat'l Bank–West*, 716 F.2d 378, 389 (6th Cir.1983)). And Wilcox provided the Court with several cases that, although factually distinct, are sufficient to reasonably ascertain an appropriate award for non-economic damages.

Wilcox first points to *Selk v. Res-Care, Inc.*, a case in which the plaintiff sued the corporations responsible for running a group home after he was raped by a recently hired employee of the home. *See* Brief for Appellee, *Selk v. Res-Care, Inc.*, N.M. Ct. App. No. 30,319, 2, 4-6, https://coa.unm.edu/oral-arguments/2011/11/docs/selk/Plantiff-Answer-Brief.pdf. While Wilcox points to the entire damages award, the jury awarded $4.95 million in compensatory damages and only 5% ($247,000) was apportioned to the perpetrator of the assault. *Id.* at 15. Moreover, that award included economic and non-economic damages, for which the plaintiff provided verifying medical evidence.[11]

Wilcox also relies on *Schwartz v. Oakdale Heights Management Corp.*, wherein a care facility employee attempted to rape an elderly resident but stopped when another employee intervened. Verdict and Settlement Summary, *Schwartz v. Oakdale Heights Mgt. Corp.*, Cal. Super. Ct. No. PC044618, 2010 WL 2894470. In

---

[11] *See* Courtney L. Davenport, *Attorneys for disabled rape victim prove group home's parent corporation is liable*, Trial, Apr. 2010, at 53.

the *Schwartz* case, the plaintiff had not sustained any physical injuries. *Id.* The jury awarded $6 million in damages, with 50% ($3 million) apportioned to the individual who perpetrated the attempted assault. *Id.*

Wilcox next points to *Atchinson v. Maielle*, a case in which the plaintiffs sued their former youth minister, Diocese, Church, and Pastor after enduring years of sexual abuse at the hands of the minister, which resulted in "anxiety, depression, flashbacks, nightmares," and difficulties with relationships.[12] The jury awarded one plaintiff a total of $5.5 million and the other $5.95 million for their pain and suffering, and apportioned 70% fault to the youth minister ($3.85 million and $4.165 million, respectively*). See Whitwell v. Archmere Acad., Inc.*, No. CIV.A.07C08006RBY, 2008 WL 1735370, at *5 (Del. Super. Ct. Apr. 16, 2008) (describing the proceedings in the federal case).

Wilcox similarly relies on *Whitwell v. Archmere Academy, Inc.*, in which the plaintiff sued his private institution, Disocese, and two reverends after one of the reverends sexually abused him over the course of several years. *Whitwell v. Archmere Acad., Inc.*, No. CIV.A.07C08006RBY, 2008 WL 1735370, at *5. There, the reverend who perpetrated the abuse defaulted, and the court awarded the plaintiff $6 million in compensatory damages against that reverend alone.[13] Although the breakdown of

---

[12] *See* Bruce Lambert, *2 Raped by Minister are Awarded $11.45 Million*, N.Y. Times (May 19, 2007), https://www.nytimes.com/2007/05/19/nyregion/19church.html.

[13] *See* Beth Miller, *Archmere Grad Gets $41 Million in Abuse Suit*, Del. News J., March 31, 2007.

14

the damages awards in the remaining cases provided by Wilcox are not always discernable, most of them seem to follow suit.[14]

Despite their distinctions, these cases establish that incidents of sexual assault can significantly hinder an individual's emotional wellbeing, and "ha[ve] lasting effects justifying a high non-economic damages award." *Morgan ex rel Campbell v. Wayne Cty.*, No. 17-12094, 2021 WL 1220870, at *3 (E.D. Mich. Apr. 1, 2021); *see also Vosburg v. Solem*, 845 F.2d 763, 765 (8th Cir. 1988) (remarking that a $10,000 jury verdict for an inmate who filed suit against prison officials after repeated sexual assaults by other inmates "almost approach[ed] inadequacy"). But taking into consideration that Wilcox has been awarded default judgment, and that the evidence

---

[14] The following are examples:
  (1) an $8.4 million damage award in *In re Greenburg*, a case in which a child had been repeatedly sexually abused by her mother's boss and landlord. Brief for Respondent at 4-5, *In re Greenberg*, Cal. App. 1 Dist. No. A116946, 2007 WL 2314176, at *6-7.
  (2) a $10 million non-economic damage award with 70% ($7 million) allocated to the perpetrator in *Doe v. Doe*, wherein an adolescent had been raped by an ambulance attendant en route to the hospital. *Doe v. Doe*, No. 307420, 2014 WL 6852750, at *1, 7 (Mich. Ct. App. Dec. 4, 2014).
  (3) a $7.5 million compensatory damages award, with 15% ($1.125 million) allocated to perpetrator in *McLaughlin v. Garden Spot Village*, wherein an elderly woman was sexually assaulted by another resident at her care facility. *$7.5 million verdict awarded in Pennsylvania nursing home assault case*, Wilkes & Associates (May 4, 2018), https://yourcasematters.com/2018/05/04/7-5-million-verdict-awarded-in-pennsylvania-nursing-home-assault-case/.
  (4) a $9.5 million damage award with 30% ($2.85 million) allocated to perpetrator in *Doe v. Rose Bowl Aquatic Center*, wherein a child was sexually assaulted by an adult patron in the locker room of an aquatic center.
  (5) a $25 million award for physical and mental pain and suffering in *Gray v. Hohenshell*, wherein an adolescent was raped by her friend's father after he gave her alcohol. *Gray v. Hohenshell*, 927 N.W.2d 680, 2019 WL 325015, at *1 (Iowa Ct. App. 2019).

of non-economic damages in this case is limited to Wilcox's statements and analogous case-law, the undersigned finds insufficient support for the amount Wilcox requested.

In *Morgan ex rel Campbell v. Wayne County*, the Eastern District of Michigan was similarly tasked with ascertaining a damages award for a prisoner who was sexually assaulted by another inmate. 2021 WL 1220870, at *1. There, the plaintiff sued the psychiatric facility where the assault occurred, and the facility defaulted. *Id.* The plaintiff requested $1.5 million in non-economic damages, citing analogous case law in which plaintiffs were awarded between $1 million and $1.8 million in damages. *Id.* at *3. But the cases in which plaintiffs were awarded more than $1 million in damages involved multiple instances of sexual assault, or the sexual assault of a child, whereas *Morgan* involved one instance of sexual assault against an adult. *Id.* Based on those distinctions, the court awarded the plaintiff $1 million instead of the requested $1.5 million. *Id.*

Here, Wilcox alleges that Kalchert beat and sexually assaulted him on three occasions while they shared a cell in LMF's Protective Custody Unit. He requests $35 million in non-economic damages, citing cases in which, as set forth above, the plaintiffs were awarded between $4.95 and $25 million in compensatory damages. But, as in *Morgan*, many of those cases involved minors. In addition, many involved abuse over the course of several years, and claims of negligent supervision rather than, or in addition to, claims of sexual assault. Because Wilcox is an adult, and sues only Kalchert, the undersigned cannot agree that a non-economic damage award of $35 million is appropriate here. But because Wilcox's allegations involve multiple

16

instances of sexual assault, the undersigned finds that an award of $1.5 million in non-economic damages is warranted. *See Morgan ex rel Campbell*, 2021 WL 1220870, at *3; *Langton v. Combalecer,* No. 06-11987, 2008 WL 11504510, at *2 (E.D. Mich. July 11, 2008) (awarding $2 million in damages for pain and suffering after the defendant, a prison psychiatrist who had sexually harassed and assaulted the plaintiff over the course of two years, defaulted); *Mize v. Tedford*, No. 08-CV-10660-DT, 2009 WL 1508375, at *3 (E.D. Mich. May 29, 2009), *aff'd*, 375 F. App'x 497 (6th Cir. 2010) (awarding $350,000 in damages in case involving a single sexual assault after the defendant police officer defaulted).

### c. Exemplary Damages

Turning finally to Wilcox's request for $7.5 million in exemplary damages, the undersigned acknowledges that mental and emotional injuries alleged by Wilcox are the kind of injuries for which Michigan law allows exemplary damages. However, exemplary damages are not appropriate where they redress the same harm addressed by compensatory damages. *Veselenak*, 327 N.W.2d at 263 (1982). Here, the undersigned has considered the mental and emotional distress suffered by Wilcox in recommending the award of $1.5 million in non-economic damages. Accordingly, an additional award of exemplary damages is not appropriate.

### VI.   Recommendation

The undersigned respectfully recommends that the Court grant Wilcox $1.5 million in non-economic damages. In the opinion of the undersigned, Wilcox has provided the Court with evidence from which the Court can reasonably ascertain

those damages.  However, Wilcox has not provided sufficient evidence from which the Court could reasonably ascertain economic damages.  And exemplary damages, under the circumstances of this case, would be duplicative.

Dated: March 14, 2022

                                                 /s/ *Maarteen Vermaat*
                                                 MAARTEN VERMAAT
                                                 U.S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).