UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEVEN J. WILCOX,

    Plaintiff,

v.

JOSHUA STEPHEN KALCHERT,

    Defendant.
_____/

Case No. 2:20-cv-234

Hon. Hala Y. Jarbou

## **OPINION**

Plaintiff Steven J. Wilcox, who is a prisoner incarcerated in Michigan, brought this action under diversity jurisdiction against Joshua Stephen Kalchert, another prisoner who was incarcerated in Michigan until his release on parole. The Court has a continuing duty to scrutinize the basis for its subject matter jurisdiction. Upon review, the Court concludes that it lacks subject matter jurisdiction and that Plaintiff has committed fraud by attempting to show otherwise.

**A. Background**

    **1. Plaintiff Alleges Tennessee Citizenship**

This Court has jurisdiction over suits between citizens of different states. 28 U.S.C. § 1332(a)(1). Defendant is a citizen of Michigan. Plaintiff alleges that he is a citizen of Tennessee because he was "domiciled there prior to his confinement in a Michigan correctional facility." (Compl. ¶ 1, ECF No. 1.) "[C]itizenship for purposes of 28 U.S.C. § 1332(a) means domicile rather than residence . . . ." *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973). Domicile generally requires physical presence in a state and an intention to make one's home there indefinitely. *Id.* A person does not automatically acquire a new domicile "in a place if he is there by virtue of physical or legal compulsion." *Id.* at 1121. Consequently, "there is a rebuttable

presumption that a prisoner retains his former domicile after incarceration." *Spencer v. Stork*, 513 F. App'x 557, 558 (6th Cir. 2013).

### 2. Plaintiff's Criminal History Suggests Michigan Citizenship

Although Plaintiff contends that his domicile prior to his incarceration was in Tennessee, public records undermine that assertion. As the Court of Appeals noted, Plaintiff has multiple convictions for offenses committed in the state of Michigan, dating back to 1991.[1] Indeed, his Michigan Department of Corrections ("MDOC") offender profile indicates that the offenses leading to his current term of incarceration occurred in 2002, in Oakland County, Michigan. Those offenses involved criminal sexual conduct, home invasion, and kidnapping. Approximately ten years before that time, Plaintiff had committed six other offenses in Washtenaw County, Michigan. And according to a complaint that Plaintiff filed in another court in 2006, Plaintiff represented that he is a citizen of Michigan. (*See Wilcox v. Oakland Cnty.*, No. 2:06-cv-15471 (E.D. Mich. 2006), Compl. ¶ 3, ECF No. 1.) For these reasons, the Court of Appeals directed this Court to "review the litigants' domiciles for purposes of subject-matter jurisdiction." *Wilcox v. Kalchert*, No. 22-1444, 2023 WL 2576454, at *3 n.1 (6th Cir. Mar. 16, 2023).

### 3. Plaintiff Submits Sworn Statements Averring Tennessee Citizenship

On April 12, 2023, this Court ordered Plaintiff to show cause why the Court should not dismiss the case for lack of subject matter jurisdiction. Plaintiff responded with a sworn declaration asserting that, at the time of his arrest in March 2002 for the offenses that are the basis for his current incarceration, he resided in Christiana, Tennessee. (Wilcox Decl., ECF No. 125-1.) He had leased a home there and obtained a Tennessee driver's license. He stated that he was visiting relatives in Michigan at the time of his arrest. (*Id.*)

---

[1] *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=223862.

Plaintiff also directed the Court to *Wilcox v. Spiekerman*, No. 5:14-cv-11317 (E.D. Mich.), in which he made similar representations to establish diversity jurisdiction. There, Plaintiff contended that at the time of his arrest in Michigan, he had a "Tennessee driver's license and not a Michigan one," he received mail and bills at his Tennessee residence, he had a telephone number from Tennessee with a 615 prefix, he was paying taxes in Tennessee, and he had applied for unemployment benefits in Tennessee. (*Spiekerman*, Wilcox Decl., ECF No. 7, PageID.37-38.) He further claimed that in March 2002, he traveled from his home in Tennessee for a "two week" visit with his "terminally ill grandfather" in Garden City, Michigan. (*Id.*, PageID.37.) Before he could return to Tennessee, however, he was arrested on March 11, 2002, in Wixom, Michigan, on charges of kidnapping and home invasion. (*Id.*) He was held in jail in Oakland County, where he remained until he was convicted. Oddly, unlike in his sworn declaration here, he claimed that his Tennessee home was located in Mt. Pleasant, Tennessee, rather than Christiana.[2]

### 4. The Court Accepts Plaintiff's Statements

When there is a "factual controversy" about subject matter jurisdiction, "the district court must . . . weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). "[A] trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.*

Plaintiff's averments about his Tennessee residence, his visit to Michigan, and his subsequent arrest for serious crimes committed in Michigan seemed implausible; however, nothing in the record clearly disputed Plaintiff's explanations. Consequently, the Court concluded that

---

[2] These two cities are approximately 60 miles apart from one another.

3

Plaintiff was a citizen of Tennessee and that the Court possessed subject matter jurisdiction over the case.

### B. New Evidence Refutes Plaintiff's Statements

In preparation for further proceedings, the Court recently took additional steps to confirm that it has jurisdiction by reviewing public records from Plaintiff's criminal cases in Oakland County, which are judicially noticeable. Those cases are the basis for Plaintiff's arrest in 2002 and his confinement since that time. Records from those cases refute Plaintiff's assertions that he was a resident and citizen of Tennessee at the time of his arrest. They confirm that Plaintiff was residing in Michigan and that he had established significant ties there. Contrary to Plaintiff's sworn statements here and in *Spiekerman*, he did not travel from Tennessee to Michigan in March 2002. Rather, he had been living and working in Michigan since as early as December 2001, which corresponds to the date he was released from prison for his prior offenses.[3] His ties to this state included renting residences, using Michigan phone numbers, obtaining a Michigan driver's license, and working in Michigan for a Michigan employer.

For instance, in *People v. Wilcox*, No. 02-182828-FH (Oakland Cnty. Cir. Ct.), the State of Michigan charged Plaintiff with three counts of illegal use of a financial transaction device, occurring on December 21, 2001, in Novi, Michigan. The complainant was Richard Wilcox. An arrest warrant issued on January 22, 2002. After Plaintiff's arrest, he submitted a sworn statement to the court dated February 10, 2002, seeking the appointment of an attorney. (Ex. 1 to this Opinion, Request for Appointed Attorney in *Wilcox*, No. 02-182828-FH (Oakland Cnty. Cir. Ct.).) In his statement, he asserted that his address was 4075 Castlewood in Wixom, Michigan, where

---

[3] Plaintiff's MDOC profile states that he was discharged from prison on December 1, 2001, after serving sentences for six offenses committed in Washtenaw County, Michigan, in 1991 and 1992. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=223862.

4

he rented a residence for $640 per month. (*Id.*) He also listed a phone number with a 248 area code, which is an area code for southeastern Michigan. Notably, he claimed that he was employed by "Portsmouth Apts" in Novi, Michigan, where he had been working *for three months*. (*Id.*) The prosecutor later dismissed the case because Plaintiff had been convicted and sentenced for more serious crimes.

In *People v. Wilcox*, No. 02-183783-FC (Oakland Cnty. Cir. Ct.), the State of Michigan charged Plaintiff with kidnapping, first degree home invasion, and receiving and concealing stolen property, occurring on March 11 through March 13, 2002, in Oakland County, Michigan. Plaintiff again requested the appointment of an attorney. In a sworn statement dated March 14, 2002, Plaintiff asserted that his address was an apartment at 48621 Pontiac Trail in Wixom, Michigan, which he rented for $500 per month. (Ex. 2 to this Opinion, Request for Appointed Attorney in *Wilcox*, No. 02-183783-FC (Oakland Cnty. Cir. Ct.).) According to the felony information and other court records, the home invasion and kidnapping took place in the apartment next to his. Plaintiff pleaded nolo contendere to the kidnapping and home invasion charges, and on November 13, 2002, the court sentenced him to up to 60 years in prison.

In *People v. Wilcox*, No. 02-184006-FH (Oakland Cnty. Cir. Ct.), the State of Michigan charged Plaintiff with multiple counts of third-degree criminal sexual conduct and one count of accosting a minor for immoral purposes, occurring in March 2002 in Oakland County. The bindover to the circuit court states that Plaintiff has a Michigan driver's license and resides at an address on Pontiac Trail in Wixom, Michigan. (Ex. 3 to this Opinion, Oakland Cnty. Bindover.) As in his other criminal cases, Plaintiff submitted a sworn statement requesting the appointment of an attorney. (Ex. 4 to this Opinion, Request for Appointed Attorney in *Wilcox*, No. 02-184006-FH (Oakland Cnty. Cir. Ct.).) In that statement, dated March 21, 2002, Plaintiff asserted that his

5

address was located at 48261 Pontiac Trail in Wixom, Michigan, where he rented a residence for $500 per month. (*Id.*) He also listed a phone number with a 248 area code. Plaintiff later pleaded guilty to one count of third-degree criminal sexual conduct and was sentenced to up to 60 years in prison.

In summary, Plaintiff was incarcerated from 1992 to December 2001 for offenses committed in Michigan. He was a free citizen for a few months from December 1, 2001, until about March 11, 2002, when he was taken into custody again. He has remained in custody since that time. According to sworn statements he presented in state court, during the few months while he was free, he established a residence and workplace in Michigan. He also obtained a Michigan driver's license and committed additional criminal offenses in Michigan. In light of these facts, it would have been nearly impossible for him to establish a domicile in Tennessee. Indeed, the Court did not find any reference to Tennessee in the state court records it reviewed. Instead, those records repeatedly reference Plaintiff's ties to Michigan, including Michigan addresses, Michigan phone numbers, a Michigan driver's license, a Michigan job, and criminal conduct in Michigan. The only evidence to the contrary is from Plaintiff's self-serving, inconsistent, and apparently false statements to this Court and to the district court for the Eastern District of Michigan. Those statements are not credible.

Making false statements is consistent with Plaintiff's past behavior. He has a long history of fraudulent conduct. Two of his earliest convictions are for obtaining money under false pretenses. Since that time, he has extended his fraudulent conduct to improper use of the court system in order to harass others or to benefit himself.

In 2011, for example, Plaintiff filed a fraudulent writ of garnishment against a life insurance policy owned by a fellow inmate, Agostino Comella, Jr. (*See Comella v. Pruco*

6

*Securities, LLC*, No. 1:11-cv-541 (W.D. Mich.), Event Chronology, ECF No. 12-2, PageID.90; *Comella*, Writ for Garnishment, ECF No. 16-2.) The policy was an asset recoverable in an enforcement action brought by Mary Ann Comella and Catherine Camella-Ports in Kent County Circuit Court for a judgment against Agostino Comella, Jr. Plaintiff apparently attempted to transfer the life insurance benefits from Agostino to himself and then altered a writ of garnishment he had obtained from a different case in order to recover money from the policy insurer. The Kent County Circuit Court declared the transfer of the policy to Wilcox "null and void." (*Comella*, Kent Cnty. Cir. Ct. Order, ECF No. 15-5, PageID146-145.) That court also concluded that Plaintiff had "participated in and/or attempted to perpetrate a fraud" on the court and it permanently enjoined him from "interfering with or claiming ownership of any assets of Agostino Comella, Jr." (*See Comella*, Kent Cnty. Cir. Ct. Injunction, ECF No. 12-1, PageID.84.)

In *Spiekerman*, Plaintiff sought to recover money from his former defense attorney (Charles Spiekerman), the attorney's wife, and a lottery winner in New Jersey based on a default judgment Plaintiff had obtained against the attorney. (*See Spiekerman*, Am. Compl., ECF No. 9.) The lottery winner had no discernible connection to the default judgment.

In *Wilcox v. Terpening*, No. 1:14-cv-535 (W.D. Mich.), Plaintiff filed a dubious complaint against Amanda and Michael Terpening, alleging that, while he was incarcerated, he loaned them $250,000 under an agreement secured by property worth over $300,000. (*Terpening*, Compl., ECF No. 1.) He claimed that they defaulted under the agreement, and he sought damages for breach of the alleged contract. It is not clear how Plaintiff, who claimed that he owned almost no assets when he sought appointment of counsel in his criminal cases, could have accumulated such an enormous sum of money to lend to others.

Plaintiff later pleaded guilty to three counts of larceny by conversion related to his fraudulent attempts at obtaining money through the legal system. *See* Rachel Van Gilder, *Authorities: Inmates' Scam targeted lotto winner, others*, WoodTV.com (Mar. 28, 2016), https://www.woodtv.com/news/authorities-inmates-scam-targeted-lotto-winner-others/.

Not surprisingly, when this case was before the Court of Appeals, Defendant Kalchert told that court that Plaintiff had forged documents and fraudulently filed a federal lawsuit and numerous prison grievances in Defendant's name. *Wilcox*, 2023 WL 2576454, at *2. Kalchert contended that "this action is but another chapter in Wilcox's campaign of targeted harassment against him." *Id.*

## II. CONCLUSIONS

### A. The Court lacks jurisdiction because Plaintiff is not a citizen of Tennessee.

In summary, the weight of evidence before the Court tilts decisively in one direction. Plaintiff was not a citizen of Tennessee at the time of his arrest in 2002 and therefore was not a citizen of Tennessee when he filed this lawsuit. If anything, he was a citizen of Michigan and remains one today. Plaintiff's representations to this Court about his citizenship are not credible. Indeed, the evidence strongly suggests that his statements are false, and were made for the improper purpose of sustaining a lawsuit that does not belong in federal court. Because Plaintiff cannot meet his burden of demonstrating diversity of citizenship, the Court lacks jurisdiction over the case. Before dismissing the case, however, the Court will give Plaintiff an opportunity to respond.

### B. Plaintiff committed fraud on the Court.

Plaintiff's apparently false representations violated his obligations to the Court under Rule 11(b) of the Federal Rules of Civil Procedure, which requires that a party make factual representations that are warranted to their best of their knowledge. The Court has authority to

8

sanction Plaintiff for his conduct after giving him notice and an opportunity to respond. Fed. R. Civ. P. 11(c)(3). The Court also has inherent authority to sanction him for bad faith conduct, such as perpetrating a fraud on the court. *See First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002).

For the foregoing reasons, the Court will order Plaintiff to show cause why the Court should not (1) dismiss the case for lack of jurisdiction and (2) sanction him for his false statements, including dismissal of the case with prejudice, monetary fines, and/or other penalties.

Dated: October 15, 2024              /s/ Hala Y. Jarbou
                                      HALA Y. JARBOU
                                      CHIEF UNITED STATES DISTRICT JUDGE

9